UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIA ELLINGHAUS individually and on behalf of all others similarly situated,<br><br>                                  Plaintiffs,<br>    v.<br><br>EDUCATIONAL TESTING SERVICE, and THE COLLEGE BOARD,<br><br>                                  Defendants. | **CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>Case No. 15-cv-3442 |

Plaintiff Julia Ellinghaus ("Plaintiff") bring this class action against Defendants Educational Testing Service and The College Board (collectively, "Defendants") on behalf of herself and all others similarly situated to obtain damages and restitution for the Class, as defined, below, from Defendants. Plaintiff makes the following allegations upon information and belief, except as to her own actions, the investigation of her counsel, and the facts that are a matter of public record:

**NATURE OF THE ACTION**

1. Plaintiff brings this class action against Defendants for the defective administration and scoring of the SAT (formerly known as the Scholastic Aptitude Test) on Saturday, June 6, 2015 (hereinafter "June 6th Test").

2. The SAT is a standardized, 10 part, 4-hour exam widely used for college admissions in the United States.

3. It is the standardized exam taken by more than 2 million examinees yearly and fees per exam can total over $100 per registration.

4. The SAT alone brings in fees of well over $400 million dollars to Defendants.

5. According to a statement by Defendant The College Board, during the administration of the June 6th Test, "there was a printing error in the standard test books ETS provided to students taking the SAT that day in the United States."

6. This "printing error" stated that examinees had 5 extra minutes to complete sections 8 or 9. Examinees "were given 25 minutes to complete one of the test sections — either the reading section or math (depending on the test taken) — per their test books."[1]

7. Some of the proctors caught the error and only allowed 20 minutes. Those that did not allowed for 25 minutes to complete the sections.

8. Defendant The College Board sent an email to affected examinees and posted a notice on its website (hereinafter the "Notice").[2]

9. In that Notice, Defendants stated, "the affected sections will not be scored."

10. As a result, Plaintiff and Class Members' SAT scores are not equivalent to scores of SATs administered before the June 6th Test and cannot be equivalent to SATs administered thereafter.

11. In the Notice Defendants do not offer to allow affected examinees to retake the test.

12. On the date of the Notice, Defendants' website for the SAT was less than helpful and failed to provide a means of redress: "We apologize for the inconvenience, but the SAT website is currently unavailable."

13. A cached version of the site states that the basic SAT costs $52.50, with an

---

[1] http://www.techtimes.com/articles/59050/20150610/heres-what-the-college-board-will-do-with-printing-glitch-on-sat-tests-nothing.htm
[2] https://lp.collegeboard.org/information-regarding-the-saturday-june-6-sat-administration

2

additional fee of $26 for "Basic Subject Test Fee (per registration)" and $16 for "All other Subject Tests (per test)."[3]

14.     Each examinee can spend over $100 for SAT registration.

15.     Plaintiff brings this lawsuit on behalf of herself and all others similarly situated alleging that Defendants breached their contract with Plaintiff and the Class she seeks to represent; acted and spoke negligently; and were unjustly enriched.

16.     Plaintiff seeks monetary damages and declaratory and equitable relief on behalf of all examinees of the June 6th Test and any other tests similarly administered during the Class Period defined below.

## PARTIES

17.     Plaintiff Julia Ellinghaus is a resident of Nassau County, New York.

18.     Plaintiff attends high school in New York and expects to graduate with the Class of 2016.

19.     Plaintiff registered, paid for, attended and completed the Saturday, June 6, 2015 SAT as an examinee with Defendants.

20.     Defendant Educational Testing Service (hereinafter "ETS" or "Defendant ETS") is a New Jersey corporation and is the world's largest private nonprofit educational testing and assessment organization.[4]

21.     Defendant ETS has its headquarters located at 660 Rosedale Road, Princeton, NJ 08541.

22.     Defendant ETS states: "ETS develops and administers the SAT, the Advanced

---

[3] http://webcache.googleusercontent.com/search?q=cache:E1m4zxJVSzQJ:https://sat.collegeboard.org/register/us-services-fees+&cd=1&hl=en&ct=clnk&gl=us
[4] http://www.funduniverse.com/company-histories/educational-testing-service-history/

3

Placement Program Exams and other programs on behalf of the College Board…. While the College Board is our largest client, we also work with dozens of other organizations and associations."[5]

23. Defendant The College Board ("TCB" or "Defendant TCB") is a New York non-profit corporation that has its primary offices at 250 Vesey Street, New York, NY 10281.[6]

24. Defendant TCB's charter, granted April 25, 1957, states that the purpose of the corporation is to "provide for the continuance and development of a program of tests and examinations."[7]

## JURISDICTION AND VENUE

25. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), the Class contains members of diverse citizenship from Defendants, and the amount in controversy exceeds $5 million.

26. This Court has personal jurisdiction over Defendants: Defendant TCB's corporate headquarters are here; it is chartered under the laws of this state; and because Defendants are authorized to conduct substantial business in New York, generally, and in this District, specifically.

27. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District; Defendants engage in substantial business within this District; and Plaintiff registered for and was an examinee at the June 6th Test within this District.

---

[5] https://www.ets.org/about/faq/
[6] https://www.collegeboard.org/about
[7] https://www.collegeboard.org/about/governance/charter

## FACTS

*The Business of Standardized Testing*

28. Defendants are the largest providers of paid college entrance standardized examination services in the United States, and provide such services in all 50 states.

29. There are only two ways to register for the SAT: online registration or postal mail registration.

30. To register by postal mail, a student must obtain, fill out and mail to Defendants their "SAT Paper Registration Guide" and payment of the registration fee.

31. To register online, a student must go to Defendant TCB's website to fill in all information and to pay for registration by credit card.

32. Defendant TCB states: "As the nation's most widely used college admission test, the SAT is the first step toward higher education for students of all backgrounds. It is taken by more than two million students every year and is accepted by virtually all colleges and universities."[8]

33. The value of such services to the examinee is the ability to show colleges an applicant's abilities to succeed in college compared to all other applicants, reflected in the score of the standardized test.

34. Defendants state this to be true: "Standardized admissions tests offer colleges and universities a fair and impartial way to compare students from different school situations."

35. Defendants hold forth the promise of "reliable scores" as the result of sitting for one of their examinations. "Because our tests are reliable and valid, those who take, use and rely

---

[8] Because the College Board website was unavailable, this complaint cites the latest cached version of those pages on the Google search engine.
http://webcache.googleusercontent.com/search?q=cache:btk2ukxauXwJ:https://sat.collegeboard.org/about-tests/sat/why-take-the-test+&cd=1&hl=en&ct=clnk&gl=us

on our assessments can do so with confidence."[9]

36.     Defendant TCB notes on its webpage "It's more than just a test (*sic*) The SAT also provides the opportunity for you to connect to scholarship opportunities, place out of certain college courses and learn more about your academic strengths."

37.     Thus, success or failure on the SAT can mean loss of scholarships and the necessity of taking basic level courses instead of "placing out."

38.     One website, www.testprep.about.com, advises: "Take the SAT Because It's Universally Accepted - If you're going to college, you kind of *have* to take a college entrance exam like the SAT if you're attending a school that requires one (some do not). All major universities in the United States accept the SAT as a college entrance exam; most accept the ACT."[10]

39.     A great deal of pressure is on the examinees to score high. An entire industry to coach and teach the SATs, with hundreds of millions spent by college bound students to prepare for the SAT.

40.     The Princeton Review offers a "comprehensive prep course" to a student for $1,700 and guarantees "you'll improve your score by at least 200 points or get your money back."[11]

41.     Kaplan's premier tutoring package costs $3,499.[12]

42.     Private, on-on-one tutoring is even more expensive. For example, Applerouth Tutoring Services based in Atlanta charges $6,300 for a 30-hour package of private SAT exam preparation tutoring.

---

[9] https://www.ets.org/about/what/scoring/
[10] http://testprep.about.com/od/satfaqs/a/Why_Take_SAT.htm
[11] http://www.princetonreview.com/college/sat-semi_private-course#!inperson
[12] http://www.kaptest.com/sat/sat-prep-course/course-options

43. Applerouth is not alone in the lucrative SAT exam prep industry. Anxious parents are willing to pay any amount to in an attempt to raise the odds of their child's success on this very important test score.

44. College applicants are willing to spend such large sums to prepare for the SAT for several reasons: College is one of the largest financial investments individuals and families will make:
   a. Princeton University costs $59,273 a year, for a 4-year total cost of $237,092;
   b. New York University costs $66,785 a year, for a 4-year total cost of $267,140;
   c. Dartmouth College costs $66,785 a year, for a 4-year total cost of $267,140;
   d. Columbia University costs $63,440 a year, for a 4-year total cost of $253,760; and
   e. Sarah Lawrence College costs $65,480 a year, for a 4-year total cost of $261,920.[13]

45. In a February 10, 2014 article titled "The Rising Cost Of Not Going To College" were the results of a survey from Pew Research Center: the benefit in initial salary of a degree holder vs. non-degree holder was almost 100% greater:[14]

---

[13] http://www.businessinsider.com/the-10-most-expensive-colleges-in-america-2014-11
[14] http://www.pewsocialtrends.org/2014/02/11/the-rising-cost-of-not-going-to-college/

7



46.     It is therefore critically important to applicants that their applications put forward their best possible credentials to a college that will potentially change the entire course of their lives.

47.     Examinees, including Plaintiff and members of the Class, rely on the constancy and reliability of the SAT score as a solid, unquestioned indicator of relative ability.

48.     When they pay Defendants for college entrance examination services, Plaintiff and the Class she seeks to represent pay for a reputation, and a score that will not be questioned as different from their student competitors in the college application and admission process.

49.     As stated earlier, Defendants have repeatedly assured examinees that this reliability and constancy is what they receive as the benefit of their bargain with Defendants: SAT scores that are always reliable.

*The "Reliability" of the June 6th Test Scores*

      50.     Defendants have not offered any compensation to examinees of the June 6th Test.

      51.     Instead, they state that the scores delivered from the June 6th Test will be "reliable."

      52.     Not everyone is so sanguine. An article from the *The Palm Beach Post* states that,

> The most significant implication of this event is that it increases statistical variance and 'noise' – in other words, **the College Board has 30% less data about your abilities to determine your score**. This means that the scores from this test will be a less accurate predictor of your true abilities.[15]
>
> As an analogy, if I were going head to head with Kobe Bryant in a free throw shooting contest, and we each had 100 free throws, it'd be clear that he's making nearly every single basket and I'm shooting air balls half the time. But if we had only 2 free throws, I might make both of them, and he might miss both of them, and then I'd look like a much better free throw shooter than he is.
>
> That's the impact of having less data.
>
> Here's a concrete example relevant to the test. If you happened to do poorly on the first two sections but well on the third section that's being dropped, your score will be much worse than if the College Board had access to all three sections. Similarly, if you did well on the first two sections but poorly on the dropped section, you will get a much better score than if all three sections were counted.
>
> It's not uncommon for performance to be uneven across sections because in SAT Reading multiple questions rely on a single long passage. If you really just don't understand a passage in one section, you can miss many more questions than you usually do.
>
> There's another implication relating to the length of the test. The SAT is a long test and requires stamina and continuous focus to do well. Many students do suffer performance drops as the test goes on due to fatigue.
>
> Because the two sections being dropped come at the end of the test, the College Board's decision lessens the benefit of that stamina and focus. So if you're a great test taker and well-prepared, and you would otherwise have an advantage over other students because of that stamina and focus, your advantage will be wiped away.

---

[15] http://extracredit.blog.palmbeachpost.com/2015/06/10/sat-testing-foul-up-should-you-retake-the-college-board-exam/

(emphasis in the original).

53. Thus, the student who purchased the college entrance examination services from Defendants will not receive an unquestionably reliable score, to be provided by the applicant to all colleges and administrators.

54. Instead, the June 6th Test examinees' scores will be "***the SAT with the asterisk***."

55. *The Wall Street Journal* posted an article stating that:

> James S. Murphy, who has been prepping students for the SAT for almost two decade and is a tutoring manager for the Princeton Review, said in an e-mail it appears that students who "lose a math section will be scored on just 38 questions," and **he isn't sure how a score of 700 can be distinguished from a score of 800 with so few questions**. He also said: "The moral of the story is high-stakes, timed tests with small scoring increments that are relied on too much by colleges are a bad idea."[16]

(emphasis added).

56. In an article on TechTimes titled "Here's What The College Board Will Do With Printing Glitch On SAT Tests – Nothing," the columnist posits:

> However, the question of the purpose of the section's existence is raised if it is not necessary, and one can judge performance on the basis of other sections that are designed similarly to assess the performance. Moreover, what is the likelihood of a student scoring the same in one section as well as another? [17]

57. In addition to the above-referenced scoring problems, the printing error caused anxiety and stress, and resulted in the squandering of precious time for examinees of the June 6 Test. For example, an article posted on the website *Prep Scholar* described how students "started muttering in surprise and raised their hands to question the discrepancy" after discovering the

---

16 http://www.washingtonpost.com/blogs/answer-sheet/wp/2015/06/09/error-on-sat-wont-affect-student-test-scores-college-board-says/
17 http://www.techtimes.com/articles/59050/20150610/heres-what-the-college-board-will-do-with-printing-glitch-on-sat-tests-nothing.htm

error.[18]

58. Another article in USA Today quoted an examinee who wrote on Twitter that "if they invalidate the june SAT im [sic] going to jump off a bridge." [19]

## CLASS ACTION ALLEGATIONS

59. Plaintiff seeks relief in her individual capacity and seeks to represent a class consisting of all others who are similarly situated. Pursuant to Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiff seeks certification of a national class. The class is initially defined as follows:

> All examinees at the administration of Defendants' June 6th Test.

> Excluded from the Class are Defendants' officers, directors, and employees; any entity in which Defendants have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

60. <u>Numerosity</u> - Fed. R. Civ. P. 23(a)(1). The members of the Class are so numerous that the joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiff at this time, based on information and belief, it is in the hundreds of thousands, and according to one source may be approximately 487,000 students. [20]

61. <u>Commonality</u> - Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

   a. Whether Defendants had a contract or implied contract with Plaintiff and the Class she seeks to represent;

---

18 http://blog.prepscholar.com/college-board-mistake-june-6th-sat-heres-what-will-happen
19 http://www.usatoday.com/story/news/2015/06/08/sat-printing-glitch/28711985/
20 http://www.latimes.com/local/lanow/la-me-ln-sat-20150609-story.html

11

    b.   Whether Defendants' administration of the June 6th Test constitutes a breach of their contract with Plaintiff and the Class;

    c.   Whether Defendants' conduct in administration of the June 6th Test was negligent;

    d.   Whether, by the misconduct set forth herein, Defendants violated the common laws of negligent misrepresentation and unjust enrichment

    e.   Whether Defendants have been unjustly enriched such that it would be inequitable for Defendants to retain the benefits conferred upon them by Plaintiff and the Class; and

    f.   Whether Plaintiff and the Class are entitled to damages, civil penalties, punitive damages, and/or disgorgement.

62.   <u>Typicality</u> - Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of those of other Class members, all of whom were examinees of the same SAT examination and suffered the same harm.

63.   <u>Adequacy of Representation</u> - Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions.

64.   <u>Superiority of Class Action</u> - Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudication of the asserted claims. There will be no difficulty in the management of this action as a class action.

65.   Damages for any individual class member are likely insufficient to justify the cost

of individual litigation, so that in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go un-remedied without certification of the Class.

66. Defendants have acted or refused to act on grounds that apply generally to the class, as alleged above, and certification is proper under Rule 23(b)(2).

## COUNT I

### Breach of Contract

67. Plaintiff repeats, realleges, and incorporates by reference the substantive allegations contained in each of the foregoing paragraphs of this Complaint as if fully set forth herein.

68. Plaintiff brings this claim individually and on behalf of a nationwide Class.

69. Defendants solicited and invited Plaintiff and Class members to register, pay for, attend and complete their Saturday, June 6, 2015 SAT as examinees.

70. Plaintiff and Class members accepted Defendants' offer and purchased college entrance examination services from Defendants.

71. When Plaintiff and Class members purchased exam services from Defendants, Plaintiff and Class members entered into contracts (explicit or implied) with Defendants pursuant to which Defendants agreed to perform certain exam-related services.

72. Each purchase from Defendants made by Plaintiff and Class members was made pursuant to the mutually agreed-upon implied contract with Defendants under which Defendants agreed to provide, administer and score the SAT exam in a reliable and uniform manner.

73. Plaintiffs and Class members would not have purchased the exam from Defendants in the absence of the contract (implied or explicit) between them and Defendants.

74. Plaintiffs and Class members would not have prepared for and/or sat for the June 6 Test had they known that the exam would not be administered or scored in a consistent and reliable manner.

75. Plaintiff and Class members fully performed their obligations under the contracts with Defendants.

76. Defendants breached the contracts it made with Plaintiff and Class members by failing to administer the exam in a reliable and uniform manner due to the printing error in the June 6 Test.

77. As a direct and proximate result of Defendants' breaches of the implied contracts between Defendants and Plaintiff and Class members, Plaintiff and Class members sustained actual losses and damages as described in detailed within this Class Action Complaint.

## COUNT II

### Common Law Negligence

78. Plaintiff repeats, realleges, and incorporates by reference the substantive allegations contained in each of the foregoing paragraphs of this Complaint as if fully set forth herein.

79. Plaintiff brings this claim individually and on behalf of Class members nationwide.

80. Defendants provided an unreliable and defective exam to Plaintiff and Class members.

81. Defendants had a duty to exercise reasonable care in providing SAT exam services to Plaintiff.

82. Defendants had and continue to have a duty to timely disclose that Plaintiff and

Class members were taking an unreliable exam due to the printing error and that the error might have caused unreliable scores, anxiety, stress, and lost time.

83. Defendants had a duty to have procedures in place to detect and prevent the printing error that resulted in an unreliable exam for Plaintiffs and Class members.

84. Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiff and Class members by failing to exercise reasonable care in administering and providing the exam.

85. Defendants' negligent and wrongful breach of their duties owed to Plaintiff and the Class proximately caused Plaintiff and Class members damages due to the unreliable test.

86. As a result of Defendants' ongoing failure to notify Plaintiff and Class members of the printing error, and their unwillingness to allow examinees to retake the test, Plaintiff and Class members are unable to take the necessary precautions to attempt to mitigate their damages.

87. Defendants' breach caused Plaintiff and Class members to suffer the loss of time and money.

88. As a result of Defendants' negligent and wrongful breach of their duties, Plaintiff and Class members will not have a reliable exam score to provide to colleges, which may affect their ability to gain acceptance to the college or university of their choice.

89. Plaintiff seeks an award of actual damages on behalf of Class members.

## COUNT III

### Unjust Enrichment

90. Plaintiff repeats, realleges, and incorporates by reference the substantive allegations contained in each of the foregoing paragraphs of this Complaint as if fully set forth herein.

91. As described in this complaint, *supra,* Plaintiff and the Class she seeks to represent had direct contact with Defendant TCB to register for the SAT.

92. Plaintiff and the Class paid in full to register for the June 6th Test and receive the resulting score for use in the college selection and admissions process.

93. But for Defendants' negligence, Plaintiff and the Class she seeks to represent would have had the benefit of their bargain: a reliable SAT score usable in the college selection and admissions process.

94. Instead, Plaintiff and Class members received an unreliable score, one that could raise questions when used by colleges in comparing to other students' scores.

95. Plaintiff and the putative Class did not receive an SAT score that was a solid, unquestioned indicator of their relative ability as promised by Defendants.

96. Defendants received and retained registration fees from Plaintiff and the Class for a service promised but not provided: an SAT score that is a solid, unquestioned indicator of their relative ability for use in the college selection and admissions process.

97. In order to receive an SAT score that is a solid, unquestioned indicator of their relative ability, Plaintiff and the putative Class will be forced to re-register, pay for and retake the SAT examination.

98. Equity and good conscience require restitution from Defendants of any collection of registration fees for the June 6th Test.

99. If the trier of fact finds no enforceable contract exists between Defendants and Plaintiff and the Class she seeks to represent, then Plaintiff and the Class are absent a remedy under the law.

100. Defendants have been enriched, at the expense of examinees at the June 6th Test,

by profiting from the unearned fees described above.

101. Plaintiff and other members of the Class are entitled to damages as a result of the unjust enrichment of Defendants, including the disgorgement of all revenue received by Defendants as a result of this conduct.

## COUNT IV

### Negligent Misrepresentation

102. Defendants are the only administrators of the SAT examination.

103. Defendants hold themselves out to students as experts in the administration and scoring of examinations, and the SAT in particular.

104. Defendants tout to the public decades of expertise and experience in the administration and scoring of examinations, and the SAT in particular.

105. Defendants publicly broadcast their expertise, experience and sophistication in the administration and scoring of examinations so that the public will rely on these statements.

106. Defendants publish statements regarding their expertise, experience and sophistication in the administration and scoring of the SAT on their websites and paper application for the SAT and elsewhere, knowing that any applicant must read these statements.

107. Defendants had a duty to exercise reasonable care or competence in obtaining or communicating the information for the administration of the June 6th Test to Plaintiff and the Class she seeks to represent.

108. Plaintiff and Class members do not have this extensive experience and sophistication: while Defendants have administered the SAT for many years, Plaintiff and Class members have relatively little actual experience.

109. Because Defendants held themselves out as experts in the administration and

17

scoring of examinations, and the SAT in particular, and because they alone administer the SAT examination, Defendants had a special relationship approaching privity with Plaintiff and the Class she seeks to represent.

110. Plaintiff and the Class members justifiably relied on Defendants' claims of expertise and reliability of the SAT score.

111. Plaintiff and the Class members had reasonable expectations that Defendants would deliver a useful and reliable SAT score as the result of their registration, payment, and participation in Defendants' administration of the June 6th Test.

112. Plaintiff and the Class she seeks to represent put their trust and confidence in the statements of Defendants of the reliability of Defendants' administration of the SAT examination, to the detriment of Plaintiff and Class members.

113. Plaintiff and Class members justifiably relied on Defendants' misrepresentations of expertise in the administration and scoring of examinations, and the June 6th Test in particular, to the detriment of Plaintiff and Class members.

114. Because Defendants failed to deliver an examination that was uniform and reliable for use to Plaintiff and Class members in the college selection and admissions process, Plaintiff and Class members were harmed.

115. Because Defendants failed to deliver an SAT score that was uniform and reliable for use to Plaintiff and Class members in the college selection and admissions process, Plaintiff and Class members were harmed.

116. As the direct result of the misrepresentations of Defendants, Plaintiff and the Class she seeks to represent did not receive the benefit of their bargain with Defendants.

117. Plaintiff and Class members were damaged by Defendants' negligent

misrepresentation of expertise and experience in the administration and scoring of examinations, and the SAT in particular.

118. Defendants also had a duty to speak with care when administering the SAT examination itself.

119. Defendant was negligent in allowing printed instructions for the administration of the SAT examination to be distributed to almost half a million examinees without sufficiently proofreading those instructions.

120. Because Defendants did not act with sufficient care in communicating crucial instructions to Plaintiff and the Class she seeks to represent, sections 8 and 9 of the June 6th Test were invalidated.

121. Because Defendants did not act with sufficient care in communicating crucial instructions to Plaintiff and Class members, 30% of the June 6th Test will not be scored.

122. Defendants had a duty to Plaintiff and Class members because the relationship of the parties is such that in morals and good conscience Plaintiff and Class members have the right to rely upon Defendants for accurate information.

123. Defendants had a duty to Plaintiff and Class members to exercise extreme care in issuing instructions to the almost half a million examinees sitting for the June 6th Test.

124. Plaintiff and other members of the Class are entitled to damages as a result of the misrepresentations of Defendants, including, but not limited to, compensatory damages.

## JURY DEMAND

Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter judgment in their favor and against Defendants, as follows:

A. For an Order certifying this action as a class action and appointing Plaintiff and her Counsel to represent the Class;

B. For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

C. For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined;

D. For an award of costs of suit and attorneys' fees, as allowable by law; and

E. Such other and further relief as this court may deem just and proper.

Dated: Monday, June 15, 2015

_____
Paul C. Whalen, (PW1300)
**LAW OFFICES OF PAUL C. WHALEN, P.C.**
768 Plandome Road
Manhasset, New York 11030
Tel: (516) 627-5610
Fax: (212) 658-9685

Ariana J. Tadler
**MILBERG LLP**
One Penn Plaza
New York, New York 11030
Tel: (212) 594-5300
Fax: (212) 868-1229

*Counsel for Plaintiffs and the Proposed Class*